# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION

| | | |
|---|---|---|
| LISA TROUT, | : | Case No. 1:22-cv-36 |
| Plaintiff, | : | Judge Timothy S. Black |
| vs. | : | |
| UNIVERSITY OF CINCINNATI MEDICAL CENTER, LLC, | : | |
| Defendant. | : | |

**ORDER:**
**(1) GRANTING DEFENDANT'S MOTION TO DISMISS/STAY; AND**
**(2) STAYING ACTION PENDING ARBITRATION**

This case is before the Court on Defendant University of Cincinnati Medical Center, LLC's ("Defendant" or "UC") Motion to Dismiss or, in the alternative, stay this action pending arbitration (Doc. 5), and the parties' responsive memoranda (Docs. 7, 8).

## I.  BACKGROUND

Plaintiff Lisa Trout asserts claims against UC arising from her employment as a Nurse Clinician from March 9, 2020 through March 2, 2021. (*See* Doc. 3 at ¶¶ 4-30). On May 21, 2021, after Trout's termination, UC sent Trout a copy of a form to initiate arbitration. (Doc. 7 at 10). Instead of returning the form, Trout attempted to engage in settlement discussions with UC. (*Id*. at 8-9, 12). After receiving no response, Trout filed suit in state court on July 22, 2021. (Doc. 3 at ¶ 62).

Trout disputed (and continues to dispute) that she signed any arbitration agreement with UC. (Doc. 7 at 16, 18, 19). On August 14, 2021, UC provided Trout with

information showing the following: (1) Trout electronically signed the arbitration agreement on February 23, 2020; (2) Trout signed the arbitration agreement from the same IP address as other onboarding documents and W-4 form; (3) Trout used her password in order to sign into the relevant system and sign her onboarding documents; and (4) Trout agreed on her employment application that, as a condition of employment, to final and binding arbitration. (*Id*. at 16).

In August 2021, Trout informed UC that she intended to dismiss without prejudice her state lawsuit and proceed with arbitration. (Doc. 3 at ¶ 65; *see also* Doc. 7 at 14). Trout asserts that UC then failed to initiate arbitration or take any other steps to proceed with arbitration. (Doc. 3, ¶ 71). On October 25, 2021, having heard nothing from UC, Trout filed a formal demand for arbitration. (*Id.* at ¶ 72). UC responded, notifying Trout that her claims were time-barred because she filed her demand outside the 180 days allowed pursuant to the arbitration agreement. (*Id.* at ¶ 73).

On December 16, 2021, Trout initiated the instant action in state court. (Doc. 3). UC timely removed and now moves to dismiss, or, in the alternative, to stay this action pending arbitration. (Docs. 1, 5).

## II. STANDARD OF REVIEW

### A. Motion to Compel Arbitration

"Under the Federal Arbitration Act, 9 U.S.C. § 2, a written agreement to arbitrate disputes which arises out of a contract involving transactions in interstate commerce… 'shall be valid, irrevocable and enforceable'" save any reason in law or equity to the contrary. *Stout v. J.D. Byrider*, 228 F.3d 709, 714 (6th Cir. 2000) (quoting 9 U.S.C. § 2).

2

Courts are to examine the language of the contract in light of the strong federal policy in favor of arbitration. *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983) (stating that the FAA "is a congressional declaration of a liberal federal policy favoring arbitration agreements, notwithstanding any state substantive or procedural polices to the contrary"). Any ambiguities in the contract or doubts as to the parties' intentions should be resolved in favor of arbitration. *Id.*

The FAA generally applies to employment contracts with arbitration provisions. *McGee v. Armstrong*, 941 F.3d 859, 865 (6th Cir. 2019) (citing *Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 109 (2001)). When considering a motion to compel arbitration, a court has four tasks:

> [F]irst, it must determine whether the parties agreed to arbitrate; second, it must determine the scope of that agreement; third, if federal statutory claims are asserted, it must consider whether Congress intended those claims to be nonarbitrable; and fourth, if the court concludes that some, but not all, of the claims in the action are subject to arbitration, it must determine whether to stay the remainder of the proceedings pending arbitration.

*Stout*, 228 F.3d at 714 (6th Cir. 2000) (internal citations omitted). Whether the parties agreed to arbitration is simply "'a matter of contract.'" *In re: Auto. Parts Antitrust Litig.*, 951 F.3d 377, 382 (6th Cir. 2020) (quoting *AT & T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 648 (1986). When a party contests the formation of an arbitration agreement "the court must resolve the disagreement." *Id.* (cleaned up).

### B. Motion to Dismiss

The proper vehicle when requesting dismissal of a case in favor of arbitration is pursuant to Fed. R. Civ. P. 12(b)(6). "A party's 'failure to pursue arbitration' in spite of a compulsory arbitration provision means that the party has failed to state a claim upon which relief can be granted." *Pinnacle Design/Build Grp., Inc. v. Kelchner, Inc.*, 490 F. Supp. 3d 1257, 1262 (S.D. Ohio 2020) (quoting *Knight v. Idea Buyer, LLC*, 723 F. App'x 300, 301 (6th Cir. 2018)).

In reviewing a Rule 12(b)(6) motion, a court ordinarily would examine the complaint to determine whether it contained "enough facts to state a claim for relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A district court examining the sufficiency of a complaint must accept the well-pleaded allegations of the complaint as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *DiGeronimo Aggregates, LLC v. Zemla*, 763 F.3d 506, 509 (6th Cir. 2014). Here, however, the sufficiency of the allegations in the complaint is not in dispute. Rather, the motion to dismiss turns on whether the allegations in the complaint must be sent to arbitration. *See Pinnacle Design*, 490 F. Supp. 3d at 1262 (applying 12(b)(6) standard to motion to compel arbitration).

On a Rule 12(b)(6) motion, a district court "may consider exhibits attached [to the complaint], public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the complaint and are central to the claims contained therein, without converting the motion to one for summary judgment." *Rondigo, L.L.C. v. Twp. of Richmond*, 641 F.3d 673, 681 (6th Cir. 2011)

4

(internal quotation and citation omitted). The Sixth Circuit has taken a liberal view of what matters fall within the pleadings for purposes of Rule 12(b)(6). *See Armengau v. Cline*, 7 F. App'x 336, 344 (6th Cir. 2001). The ability of the court to consider supplementary documentation has limits, however, in that it must be "clear that there exist no material disputed issues of fact concerning the relevance of the document." *Mediacom Se. LLC v. BellSouth Telecomms., Inc.*, 672 F.3d 396, 400 (6th Cir. 2012) (internal quotation and citation omitted). *See also Yeary v. Goodwill Indus.-Knoxville, Inc.*, 107 F.3d 443, 445 (6th Cir.1997) ("[E]xtrinsic materials may be considered by a court if they "fill[] in the contours and details [of a complaint].").

Trout did not attach the arbitration agreement, her onboarding employment documents, the parties' communications, or her affidavit to her complaint. However, in her complaint, Trout discusses the "purported arbitration agreement" and the parties' communications. (Doc. 3 at ¶¶ 62-76). Trout also does not dispute the relevancy or the content of the documents (except for her belief that she did not sign the arbitration agreement). Thus, the Court finds it appropriate to consider all the documents attached to the parties' briefings as they help fill the contours and details of the complaint.

### III. ANALYSIS

Trout only attacks the first element: whether the parties agreed to arbitrate. *Stout*, 228 F.3d at 714. Under the FAA, state contract law is applied when determining whether a contract has been formed. *Seawright v. Am. Gen. Fin. Servs., Inc.*, 507 F.3d 967, 972 (6th Cir. 2007). Under Ohio law, "[t]he cardinal principle in contract interpretation is to give effect to the intent of the parties." *Transtar Elec., Inc. v. A.E.M. Elec. Servs. Corp.*,

16 N.E.3d 645, 648 (Ohio 2014).  "In order to give effect to that intent, we 'examine the contract as a whole and presume that the intent of the parties is reflected in the language of the contract.'"  *Rogers v. SWEPI LP*, 757 F. App'x 497, 503 (6th Cir. 2018) (Moore, J., concurring in part) (quoting *Sunoco, Inc. (R & M) v. Toledo Edison Co.*, 953 N.E.2d 285, 292 (Ohio 2011)).

Trout denies that she electronically signed the arbitration agreement.  (Doc. 7 at 18-19).  In support, she claims that the arbitration agreement was signed 15 days before her first day of work, that it was signed on Sunday, and that she "never worked weekends."  (*Id.* at 18).  Trout avers that the IP address associated with the electronic signature on the arbitration agreement "does not match the IP address of any electronic device [she] owns, including [her] smartphone or home computer."  (*Id.* at 19).  Trout suggests that this evidence shows that there is no arbitration agreement between the parties.

However, the same IP address stamped on the arbitration agreement is also stamped on Trout's W-4 and state tax withholding forms.  (*Compare* Doc. 5-2, PageID #85 *with* Doc. 8-1, PageID ##142-43).  The W-4 and state tax withholding forms were electronically signed the same day as the arbitration agreement.  Trout does not deny filling out or signing these forms.  Although Trout may not specifically remember signing the arbitration agreement, the credible evidence demonstrates that she did.

Trout also does not deny filling out her employment application, which application specifically references the arbitration provision.  Trout marked "Yes" to the following:

6

> As a condition of employment, new associates must sign the UC Health Arbitration Agreement. It generally provides that the new associate and UC Health agree to final and binding arbitration of all claims for which a court otherwise would be authorized to grant relief and that in any way arose or arise out of, relate in any way to, the associate's employment or termination of employment with UC Health. This requirement does not apply to new associates whose employment will otherwise be governed by an agreement containing an arbitration provision. Candidates selected for an interview will be given a copy of the Agreement to review and consider. I have read and understand this paragraph.

(Doc. 5-2 at 8). Trout assented to arbitration by commencing employment for UC after being advised (and agreeing) that the arbitration agreement was a condition of her employment. *Jones v. U-Haul Co. of Mass. & Ohio*, 16 F. Supp. 3d 922, 935 (S.D. Ohio 2014) (finding plaintiff's "conduct alone" of working for defendant bound her to the terms of defendant's arbitration clause).[1]

Finding that Trout agreed to arbitrate the dispute, the Court turns to UC's request to dismiss the entire action. The Sixth Circuit has said that "a district court should enter a stay in the normal course," but has recognized that "[t]here may be situations in which a dismissal remains permissible—say a situation in which the dispute is moot or suffers from some other pleading or procedural defect. Or a situation in which both parties request a dismissal. Or a situation in which neither party asks for a stay." *Arabian Motors Grp. W.L.L. v. Ford Motor Co.*, 19 F.4th 938, 942 (6th Cir. 2021). Although

---

[1] Trout briefly suggests that, if she is compelled to arbitration, the Court should decide whether she timely demanded arbitration given her notice to UC that she wanted to pursue arbitration and UC's failure to initiate arbitration. But, Trout gives no reason to depart from the general presumption that "arbitrators rather than judges should resolve disputes over time-limitation provisions." *United SteelWorkers of Am., AFL-CIO-CLC v. Saint Gobain Ceramics & Plastics, Inc.*, 505 F.3d 417, 422 (6th Cir. 2007).

7

Trout does not ask for a stay, she opposes dismissal.  UC also alternatively requested a stay.  UC has not persuaded the Court that this case falls outside the normal course.  The case will be stayed.

## IV.   CONCLUSION

Based upon the foregoing:

1. Defendant's Motion to Dismiss, or alternatively, to compel arbitration (Doc. 5) is **GRANTED**;

2. The Court **COMPELS** the matter to arbitration;

3. This action is **STAYED** pending arbitration.  The parties **SHALL** notify the Court within 14 days upon the conclusion of arbitration.

**IT IS SO ORDERED.**

Date:  8/16/2022　　　　　　　　　　　　　　　　　　　*s/ Timothy S. Black*
　　　　　　　　　　　　　　　　　　　　　　　　　　　Timothy S. Black
　　　　　　　　　　　　　　　　　　　　　　　　　　　United States District Judge