## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

**LISA TROUT,**

        **Plaintiff,**

        **v.**

**UNIVERSITY OF CINCINNATI**
**MEDICAL CENTER, LLC,**

        **Defendant.**

**Case No. 1:22-cv-36**

**JUDGE DOUGLAS R. COLE**

## OPINION AND ORDER

Plaintiff Lisa Trout, a former employee of Defendant University of Cincinnati Medical Center, LLC, (UCMC), wants a second bite at the proverbial litigation apple. On the previous go-around, this Court (through the then-assigned judge) ordered the parties to arbitrate her employment related claims against UCMC and stayed this matter pending the outcome of that arbitration. The parties proceeded to arbitration, and the arbitrator ruled for UCMC.

But Trout then moved to vacate the stay (a motion the previously assigned judge also granted) and now seeks to proceed on an Amended Complaint raising two claims related to the same subject matter. First, she attempts to revive her Family and Medical Leave Act (FMLA) claim against UCMC, arguing that the arbitrator did not resolve that claim. Second, she claims UCMC's failure to initiate arbitration for her (which forced her instead to commence the proceedings herself) breached an agreement she believes the parties struck in connection with dismissing her initial state-court complaint. Importantly, this latter claim was also part of the package of

claims the Court sent to arbitration, although it appears Trout did not pursue it while in that forum. UCMC now moves to dismiss.

For the reasons detailed below, Trout's re-raised breach-of-contract claim fails to state a claim for relief: there was no contract to be breached and even if there were, the claim should have been resolved before the arbitrator and was not. On the other hand, Trout's revived FMLA claim, which is timely and which the arbitrator's decision did not completely resolve, is still live. So the Court **GRANTS IN PART AND DENIES IN PART** UCMC's Motion to Dismiss (Doc. 17) and **DISMISSES WITH PREJUDICE** Count II of the Amended Complaint (Doc. 15).

## BACKGROUND[1]

Trout worked as a nurse clinician at UCMC from March 9, 2020, until March 2, 2021. (Doc. 15 ¶¶ 8, 11, #190). During her short-lived employment, she suffered two workplace injuries, which resulted in knee and elbow injuries. (*Id.* ¶¶ 13–17, #190–91). In February 2021, Trout sought worker's compensation for these injuries. (*Id.* ¶ 18, #191). Around the same time, she requested leave under the FMLA to care for her husband during the two months he would need to recover from a spinal surgery he expected to receive. (*Id.* ¶¶ 19–20, #191). UCMC purportedly denied this request. (*Id.* ¶ 21, #191). And soon after, it terminated Trout for a purported violation of the Health Insurance Portability and Accountability Act (HIPAA). (*Id.* ¶¶ 11, 25, #190–91). According to UCMC, Trout improperly accessed her husband's medical

---

[1] As this matter comes before the Court on UCMC's motion to dismiss, the Court must accept the well-pleaded allegations in the Amended Complaint as true. *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008). But in reporting the background here based on those allegations, the Court reminds the reader that they are just that—allegations.

records at work. (*Id.* ¶ 23, #191). While Trout does not deny doing so, she claims it did not violate HIPAA because she could access his records "through his MyChart account," (*id.* ¶ 24, #191)—though Trout does not state whether she used his MyChart account or instead used her work credentials when she accessed his records at work.

Believing she had been wronged, Trout sued UCMC in state court on July 22, 2021, raising several employment-related claims—she alleged UCMC retaliated against her for seeking worker's compensation, wrongfully terminated her in violation of public policy, and unlawfully interfered with her FMLA rights. Complaint, *Trout v. Univ. of Cincinnati Med. Ctr., LLC*, No. A 2102514 (Hamilton Cnty. Ct. Com. Pl. July 22, 2021) [hereinafter State Complaint].[2] UCMC responded by notifying Trout of her obligation to arbitrate these claims under an agreement (the Arbitration Agreement) Trout signed during her employment with UCMC.[3] (Doc. 5-2, #83–85; Doc. 15 ¶ 46, #193). While disputing that she signed anything,[4] Trout agreed to comply with the Arbitration Agreement by arbitrating her claims and

---

[2] "[T]he Court 'may take judicial notice of proceedings in other courts of record.'" *Dates v. HSBC*, ___ F. Supp. 3d ___, 2024 WL 860918, at *1 n.1 (S.D. Ohio 2024) (quoting *Granader v. Pub. Bank*, 417 F.2d 75, 82 (6th Cir. 1969)). A digital copy of Trout's original complaint is available here: https://perma.cc/3G9L-KQ2W.

[3] As the claims turn on the terms of the binding Arbitration Agreement, (Doc. 10, #150–52), it falls within the narrow class of written instruments of which the Court may take judicial notice at the pleading stage, even when not attached to the Complaint. *Anderson v. ABF Freight Sys., Inc.*, No. 1:23-cv-278, 2024 WL 51255, at *9 (S.D. Ohio Jan. 4, 2024).

[4] Both the Court and the arbitrator concluded that the evidence establishes that Trout did in fact sign the Arbitration Agreement. (Doc. 10, #151; Doc. 12-1, #160). Despite these express findings, she continues to insist that she did not do so. (Doc. 15 ¶ 47, #193).

dismissing her initial state-court suit, the latter of which she did on August 19, 2021. (Doc. 15 ¶¶ 47–50, 52, #193–94).[5]

A few months then elapsed without any further events, apparently due to a miscommunication. Believing UCMC would initiate arbitration on her behalf, Trout took no action to do so. (*Id.* ¶ 54, #194). UCMC, on the other hand, did not initiate any arbitration proceedings because it maintains that the Arbitration Agreement obliged Trout to do so if she wished. (Doc. 5, #45; Doc. 15 ¶ 54, #194). Once October 2021 rolled around without any change to the status quo, Trout filed an arbitration demand. (Doc. 15 ¶ 55, #194). On November 24, 2021, UCMC opposed this demand on the grounds that Trout filed it outside the Arbitration Agreement's 180-day window for her to initiate arbitration proceedings. (*Id.* ¶ 56, #194). It appears that Trout did not pay the arbitration filing fee ($45), nor did the arbitration go forward.[6]

---

[5] Trout claims the email exchange—in which UCMC notified her of the Arbitration Agreement and in which her counsel notified UCMC that she would dismiss her initial suit—memorializes a distinct enforceable agreement. (Doc. 15 ¶¶ 48–52, #193–94). In other words, Trout claims that she agreed to arbitrate her claims against UCMC under the Arbitration Agreement as consideration for her dismissal of the initial lawsuit. To avoid confusion, the Court will refer to this so-called contract (exchanging the dismissal for Trout's compliance with the Arbitration Agreement) as the "Litigation Agreement."

[6] Per the arbitration agreement, once an aggrieved party files a demand with UCMC directly and pays the $45 filing fee and once UCMC responds, the parties then jointly decide on an arbitrator and proceed to discovery and, ultimately, the hearing. (Doc. 5-2, #86–88). UCMC's attorney declares that Trout never paid the $45 filing fee when she filed her arbitration demand and that she never replied to UCMC's November 24, 2021, response opposing arbitration. (Doc. 5-1 ¶¶ 5–7, #52). Thus, it appears Trout decided instead to sue once again instead of further pursuing her October 2021 arbitration demand. In providing this accounting, the Court notes that at least some of this information is not properly considered on a motion to dismiss. But the Court provides it here merely by way of background. And these "facts" are irrelevant to the Court's analysis. So whether the account is correct or not as to these details does not change the outcome here.

Whatever the reason for the arbitration not moving forward, Trout filed this second iteration of her suit in the Hamilton County Court of Common Pleas on December 16, 2021. (Doc. 3, #29). This time, she raised four claims. The first three largely parrot those raised in her first (July 2021) suit: that UCMC allegedly (1) retaliated against her for seeking worker's compensation, (2) wrongfully terminated her in violation of public policy, and (3) unlawfully interfered with her FMLA rights. (*Id.* at #33–35). But she also added a new claim alleging that UCMC breached what Trout calls a Litigation Agreement that she claims the parties executed when she dismissed her prior suit, *see supra* note 5. (Doc. 3, #36–37).

Unlike its prior response to Trout's initiation of judicial proceedings, UCMC removed the case to this Court based on federal-question jurisdiction (as a result of the FMLA claim), (Doc. 1, #2), and then promptly moved to dismiss—once again contending that Trout was required to arbitrate her claims, (Doc. 5). After briefing, the then-assigned judge addressed UCMC's contention that Trout had to proceed in arbitration. (Doc. 10). He explained that a court's consideration of a motion to compel involves several tasks, two of which are relevant here: ascertaining whether the parties agreed to arbitrate and the scope of that agreement. (*Id.* at #148). He then noted that Trout contested only "the first element: whether the parties agreed to arbitrate." (*Id.* at #150). So he addressed just that issue and concluded that Trout had signed the Arbitration Agreement (her protests to the contrary notwithstanding), which meant the parties had agreed to arbitrate their dispute. (*Id.* at #151–52). Because no party had challenged the scope of the agreement, the judge appeared to

5

treat their silence as a concession that all claims were arbitrable as he ultimately compelled "the *matter* to arbitration." (*Id.* at #153 (emphasis added)). So after all was said and done, the prior judge sent the entire matter to arbitration and stayed this action pending such proceedings. (*Id.*). Notably, he did not address issues involving the Arbitration Agreement's enforceability.[7]

On August 24, 2023, the arbitrator rendered a decision. (Doc. 12-1). In it, he agreed that Trout signed and was bound by the Arbitration Agreement. (*Id.* at #159–60). And despite Trout's arguments to the contrary, he went on to hold that the Arbitration Agreement was not unconscionable and could be enforced. (*Id.* at #160–62). Applying its plain terms, the arbitrator concluded that the vast majority of Trout's claims were untimely because she initiated arbitration beyond the contractually set 180-day window to do so. (*Id.* at #162–63). But the arbitrator declined to find Trout's FMLA claim totally barred. He cited caselaw holding that parties could not contractually shorten the FMLA's two-year statute of limitations and suggested that, if that case law is correct, Trout would still be able to prosecute

---

[7] This result may seem unusual to some, given one would think that the enforceability of an arbitration agreement should be settled before sending the parties to arbitration under that agreement. But parties may validly agree by contract to arbitrate even "'gateway' questions of 'arbitrability.'" *Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 68–69 (2010). Of course, the Court must decide the predicate question: have the parties agreed to have the arbitrator resolve enforceability questions. *Coinbase, Inc. v. Suski*, 144 S. Ct. 1186, 1192–93 (2024). But once the Court determines what, if at all, the parties agreed to arbitrate, it then properly sends those matters to the arbitrator for resolution. *Id.* The Arbitration Agreement here included such an agreement to have threshold arbitrability issues themselves arbitrated. (Doc. 5-2, #90 ("Any dispute concerning how the Agreement was formed, or how it is to be applied, interpreted, or enforced.")).

her FMLA claim. (*Id.* at #163–64). For whatever reason, though, the arbitrator opted to leave that legal issue for the Court to assess in the first instance. (*Id.* at #164).

Seizing on this opening, Trout moved to lift the stay to permit her to proceed with the two claims from her original Complaint in this suit that she asserted were not resolved by the arbitrator's decision. (Doc. 12; Doc. 14. #185–86). Because the parties disagreed about the scope of the arbitrator's decision, the then-assigned Judge lifted the stay and authorized Trout to file an amended complaint. (10/23/23 Not. Order). Trout did so on October 30, 2023. (Doc. 15). The Amended Complaint raises two claims (both of which, as noted, she had also raised in her original Complaint here): her FMLA claim and her claim that UCMC breached the so-called Litigation Agreement, *see supra* note 5. (Doc. 15, #192–95). Perhaps unsurprisingly, UCMC moved to dismiss again—in part because it contended that Trout's claims were fully resolved in arbitration, and in the alternative that they lacked merit. (Doc. 17). Trout responded, (Doc. 19), and UCMC replied, (Doc. 20). On February 2, 2024, the cause was reassigned to the undersigned's docket. (Doc. 21). The matter is now ripe.

## LEGAL STANDARDS

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a "complaint must present sufficient facts to 'state a claim to relief that is plausible on its face.'" *Robbins v. New Cingular Wireless PCS, LLC*, 854 F.3d 315, 319 (6th Cir. 2017) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct

alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In assessing plausibility, the Court "construe[s] the complaint in the light most favorable to the plaintiff." *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008) (cleaned up). But while well-pleaded allegations are accepted as true, they are just that—allegations.

A court analyzing a motion to dismiss generally must confine its review to the pleadings. *Armengau v. Cline*, 7 F. App'x 336, 343 (6th Cir. 2001). That said, it "may take judicial notice of proceedings in other courts of record," *Dates v. HSBC*, ___ F. Supp. 3d ___, 2024 WL 860918, at *1 n.1 (S.D. Ohio 2024) (quoting *Granader v. Pub. Bank*, 417 F.2d 75, 82 (6th Cir. 1969)), and of arbitration filings, *Purjes v. Plausteiner*, No. 15-cv-2515, 2016 WL 552959, at *4 (S.D.N.Y. Feb. 10, 2016) (collecting cases in which courts took judicial notice of arbitration filings). And if "a document is referred to in the pleadings and is integral to the claims, it may be considered without converting a motion to dismiss into one for summary judgment." *Com. Money Ctr., Inc. v. Ill. Union Ins. Co.*, 508 F.3d 327, 335–36 (6th Cir. 2007); Fed. R. Civ. P. 10(c). These "written instruments are records falling within a narrowly defined class of legally significant documents on which a party's action or defense is based." *Anderson v. ABF Freight Sys., Inc.*, No. 1:23-cv-278, 2024 WL 51255, at *9 (S.D. Ohio Jan. 4, 2024) (cleaned up). "[T]hey often create or define legal rights or obligations, or define or reflect a change in legal relationships." *Id.* (cleaned up). "Even so, a court will not credit a document attached to a motion to dismiss [or other briefing] that is not integral to or referenced in the complaint, or is otherwise unlike quintessential examples of written instruments—for example, when the exhibit is unsigned and

undated (i.e., lacks self-verifying qualities)." *Washington v. City of Cincinnati*, No. 1:23-cv-230, 2024 WL 474403, at *2 (S.D. Ohio Feb. 7, 2024) (cleaned up).

Under the Federal Arbitration Act (FAA), following the entry of an arbitrator's decision and upon application by a party, the Court "must grant [] an order [confirming the arbitrator's award] unless the award is vacated, modified, or corrected as prescribed in sections 10 and 11 of this title." 9 U.S.C. § 9. But "[w]hen courts are called on to review an arbitrator's decision, the review is very narrow; it is one of the narrowest standards of judicial review in all of American jurisprudence." *Schafer v. Multiband Corp.*, 551 F. App'x 814, 818 (6th Cir. 2014). Importantly, "the FAA does not provide for judicial review of an arbitrator's legal conclusions." *PolyOne Corp. v. Westlake Vinyls, Inc.*, 937 F.3d 692, 697 (6th Cir. 2019). Simply, the FAA "expresses a presumption that arbitration awards will be confirmed." *Uhl v. Komatsu Forklift Co.*, 512 F.3d 294, 305 (6th Cir. 2008) (citation omitted). If the decision is not itself challenged, the arbitrator's determinations generally bind the parties. *See Cent. Transp., Inc. v. Four Phase Sys., Inc.*, 936 F.2d 256, 262 (6th Cir. 1991).

## LAW AND ANALYSIS

UCMC moves to dismiss both Trout's FMLA claim and her breach-of-contract claim. The Court will address each in turn. But before doing so, two housekeeping notes are in order. First, Trout did not move to challenge the arbitrator's decision within three months of the decision, the timeframe that 9 U.S.C. § 12 provides. And consistent with her decision not to do so, Trout has not directly challenged the arbitrator's determinations in her papers. In fact, she concedes the arbitrator's

findings are binding—describing his ruling as "precedent" in this case. (Doc. 14, #185). Considering Trout's failure to challenge the arbitrator's decision—and especially given her concession that it governs her case—the Court must faithfully apply the arbitrator's determinations to Trout's claims as appropriate. In doing so, the Court will not reconsider his legal analysis, as the FAA does not permit such review. *PolyOne Corp.*, 937 F.3d at 697. Second, when necessary, the Court will apply Ohio law to evaluate Trout's claims. That is because (1) state law governs a party's arbitration agreement when not otherwise displaced by the FAA's provisions, *Seawright v. Am. Gen. Fin. Servs., Inc.*, 507 F.3d 967, 972 (6th Cir. 2007), and (2) the previously assigned judge concluded that Ohio contract law governs this dispute, which ruling no party has sought to revisit, (Doc. 10, #150–51). With those two observations out of the way, the Court turns to Trout's two claims.

## A.    FMLA Claim

Trout's first claim alleges that UCMC interfered with her FMLA rights, (Doc. 15, #192–93)—the same claim she raised in her first state-court lawsuit, initial Complaint in this action, and arbitration demand. State Complaint at 6; (Doc. 3, #35; Doc. 13-1, #179–80). One might think, as a result, that the arbitrator would have completely resolved that claim, leaving nothing for the Court to do (except, perhaps, enforcing the award or performing the limited review available under the FAA, if a party so requested). And to a large extent, that is UCMC's first line of attack: requesting dismissal on the ground that there is nothing left for the Court to do. (Doc.

17, #205 (citing the arbitrator's finding that the FMLA claim was untimely under the contractual terms)). But here, first impressions are deceiving.

Yes, the arbitrator analyzed the FMLA claim, held that it had to be arbitrated, and concluded that Trout's claim was untimely under the shortened limitations period the Arbitration Agreement provides. (Doc. 12-1, #162–63). But the arbitrator went a step further. He expressed uncertainty whether, as a legal matter, the parties could contractually limit the FMLA's statute of limitations. (*Id.* at #163–64 (highlighting a divide in the caselaw)). And then, rather than deciding that issue, he expressly called upon the Court to do so, by asking the Court to resolve "whether [Trout's] FMLA interference claim … is viable when [she] filed the [] claim within the FMLA statute of limitations, but beyond the limitations period in the Arbitration Agreement." (*Id.* at #164). In other words, the arbitrator expressly declined to rule that Trout's FMLA claim has been completely foreclosed.

So where does that leave the FMLA claim now? Recall that a previous order in this case sent that claim to arbitration and that the arbitrator declined to render a complete decision on it. Despite that remaining open issue, no party has sought to have the Court recommit the claim (or any other aspect of this matter) to arbitration. To the contrary, UCMC has asked this Court to rule (at least as an alternative argument) on the *merits* of that claim. (Doc. 17, # 205–06 ("In any event, Plaintiff admits she did not qualify for FMLA at the time she was terminated. Plaintiff therefore does not have a valid FMLA claim to bring." (citation omitted))). That matters because a defendant's seeking a court's ruling on the merits of an arbitrable

claim—despite being expressly aware that he holds an arbitration right—has been found to constitute an implied waiver of his arbitration right.[8] *Solo v. United Parcel Serv. Co.*, 947 F.3d 968, 975 (6th Cir. 2020) (explaining that a motion to dismiss that seeks a ruling on the merits of arbitrable claims constitutes an act inconsistent with

---

[8] UCMC raises two arguments in its reply brief that attempts to invoke this caselaw as against Trout: that Trout "waived" her ability to challenge the Arbitration Agreement as unconscionable or to contest that the FMLA's statute of limitations cannot be shortened by contract. (Doc. 20, #223–24). However, UCMC's suggestion of waiver is misplaced. Trout's alleged failure to make these arguments previously would constitute only a *forfeiture*, not a waiver. Despite consistently (and erroneously) being conflated, the concepts are distinct: waiver refers to an intentional relinquishment of a known right, whereas forfeiture refers to a party's untimely assertion of that right. *Hill v. Xerox Bus. Servs., LLC*, 59 F.4th 457, 469 n.15 (9th Cir. 2023) (distinguishing the doctrines of waiver and forfeiture by noting that "waiver is defined as a party's intentional relinquishment or abandonment, which does not turn on the timing of when a right is asserted," which is forfeiture's focus (cleaned up)).

But put UCMC's mislabeling to the side. The Court agrees that Trout cannot now contest the unconscionability of the Arbitration Agreement: the arbitrator evaluated issues of unconscionability—a matter properly within his prerogative, *Rent-A-Center, W.*, 561 U.S. at 71—and concluded that the contract may validly be enforced. (Doc. 12-1, #160 ("The Arbitration Agreement is not substantively or procedurally unconscionable.")). That holding bars further review from this Court.

The Court, however, does not agree that Trout cannot contest the contractual statute of limitations. For starters, that argument, which is raised for the first time in UCMC's reply brief, is not properly before the Court. *SAT Tech., Inc. v. CECO Env't Corp.*, No. 1:18-cv-907, 2023 WL 6119934, at *3 n.7 (S.D. Ohio Sept. 19, 2023). Even if it were, the argument lacks merit. Whether the contractual time limits bar Trout's ability to prevail on the merits of her claims was an issue properly reserved for the arbitrator to resolve in the first instance. *United SteelWorkers of Am. v. Saint Gobain Ceramics & Plastics, Inc.*, 505 F.3d 417, 421–22 (6th Cir. 2007). And that means Trout had no need to argue that the FMLA's statute of limitations supersedes any contractual limitation until she was before the arbitrator. *Nat'l Republican Senatorial Comm. v. Fed. Election Comm'n*, ___ F. Supp. 3d ___, 2024 WL 205474, at *14 n.9 (S.D. Ohio 2024). In other words, it is eminently reasonable for Trout now to challenge the enforceability of the contractual limitations period as the arbitrator's decision expressly put that provision at issue. *Canter v. Alkermes Blue Care Elect Preferred Provider Plan*, No. 1:17-cv-399, 2024 WL 2698405, at *5 n.6 (S.D. Ohio May 24, 2024) (holding that a party did not forfeit an argument it did not raise until the record revealed it was relevant).

Indeed, if anything, as noted above, it is UCMC that waived a right it could have asserted—namely, its potential right to seek recommitment of this limitations issue to arbitration—by knowingly acting inconsistent with that right (seeking a judicial ruling on the merits of the arbitrable FMLA claim).

the right to arbitrate); *accord Hill v. Xerox Bus. Servs., LLC*, 59 F.4th 457, 471–79 (9th Cir. 2023) (canvassing caselaw holding that a party's seeking a ruling on the merits of an arbitrable claim, despite having knowledge of his arbitration right, evinces a partiality for *judicial* resolution, which is inconsistent with and thereby impliedly waives his arbitration right). Thus, as things stand, the FMLA claim, to the extent that it survived the arbitrator's review, is no longer arbitrable. That in turn means the Court must analyze whether the FMLA's statutory limitations period is subject to shortening by contract. If so, then the claim fails on timeliness grounds, as the arbitrator found. (Doc. 12-1, #162–63). But if not, Trout's FMLA claim may proceed to the merits, as it was filed in court less than a year after the claim accrued, (*see* Doc. 3, #29; Doc. 15 ¶¶ 11, 31, #190, 192)—well within the limitations period set out in § 107(c) of the FMLA, 29 U.S.C. § 2617(c).

UCMC urges the Court not even to answer the question, arguing that the arbitrator fully resolved the timeliness issue: "[t]he Arbitrator determined [the FMLA claim] was untimely[, which means] … there is nothing for the Court to decide." (Doc. 17, #206; *see* Doc. 20, #224). And UCMC grounds this contention in caselaw holding that courts must respect "the finality of arbitration opinions." (Doc. 17, #205 (quoting *Capone v. Atl. Specialty Ins. Co.*, No. 1:18-cv-2824, 2019 WL 3252751, at *6 (N.D. Ohio July 19, 2019))). But respecting an arbitrator's decision would seem to cut the other way here. The plain language of the arbitrator's decision left if for the Court to evaluate whether contractual modifications of the timeframe to bring FMLA claims can be enforced. And as noted, UCMC's own litigation behavior—its arguing for the

FMLA claim's dismissal based on the *merits* of that claim—bars its ability to object to the Court's review of the claim (i.e., via that action, UCMC impliedly waived its arbitration right). So the Court finds UCMC's objection to evaluating the statute-of-limitations question meritless.

With that preliminary matter out of the way, the Court turns to the substance of the question itself—whether it is proper to enforce the parties' contractual limitation period of 180 days, which shortens the otherwise applicable limitations period set forth in § 107(c) of the FMLA? The default rule, of course, is that parties can shorten otherwise-applicable limitations periods by contract subject to certain conditions: "in the absence of a controlling statute to the contrary, … a contract may validly limit, between the parties, the time for bringing an action … to a period less than that prescribed in the general statute of limitations, provided that the shorter period itself shall be [] reasonable." *Ord. of United Com. Travelers of Am. v. Wolfe*, 331 U.S. 586, 608 (1947). In other words, a court faced with such a provision must assess two issues: whether there is "a controlling statute to the contrary" and whether the proposed limitations period is "reasonable." *Id.*

The latter condition is readily dispatched. The arbitrator already determined the time period was reasonable when he found the Arbitration Agreement's limitations provision enforceable, despite Trout's unconscionability arguments to the contrary, (Doc. 12-1, #160). Moreover, as a general matter, courts have consistently held that 180-day limitations periods are reasonable, *e.g.*, *Thurman v.*

14

*DaimlerChrysler, Inc.*, 397 F.3d 352, 357 (6th Cir. 2004). Accordingly, the 180-day contractual limitations period is reasonable.

That leaves the other issue: is there "a controlling statute to the contrary"? The parties dispute whether the FMLA falls into that category. They point to competing district court decisions from across the country that disagree as to whether a contractual limitation of the FMLA's statute of limitations amounts to an impermissible interference with or restraint of an employee's rights in violation of § 105(a)(1), 29 U.S.C. § 2615(a)(1). (*Compare* Doc. 17, #205 (citing, among others, *Badgett v. Fed. Express Corp.*, 378 F. Supp. 2d 613, 625 (M.D.N.C. 2005) (enforcing a contractual limitations period that shortened the FMLA statute of limitations))), *with* Doc. 19, #215 (citing, among others, *Lewis v. Harper Hosp.*, 241 F. Supp. 2d 769, 772 (E.D. Mich. 2002) (declining to enforce a contractual limitations period and applying instead the FMLA statute of limitations))).

But the Court concludes that the Sixth Circuit's decision in *Thompson v. Fresh Products, LLC*, 985 F.3d 509 (6th Cir. 2021), obviates the Court's need to wade into that debate. In *Thompson*, the Sixth Circuit found unenforceable a six-month contractual limitations period when an employee brought claims against her employer under Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act, and the Age Discrimination in Employment Act, given each statute had longer limitations periods. *Id.* at 519–21. The *Thompson* court reached this outcome relying on what it considered well-established caselaw that "made clear that 'where statutes that create rights and remedies contain their own limitation periods,

15

the limitation period should be treated as a substantive right' which may not be waived." *Id.* at 520 (quoting *Logan v. MGM Grand Detroit Casino*, 939 F.3d 824, 829 (6th Cir. 2019)). This ruling, though not directly involving an FMLA claim, applies here. The FMLA, which is analogous to the other labor statutes at issue in *Thompson*, establishes its own rights and remedies, *see* FMLA §§ 104–05, 107, 29 U.S.C. §§ 2614–15, 2617, and contains its own statute of limitations, FMLA § 107(c), 29 U.S.C. § 2617(c). By implication, the FMLA "limitation period should be treated as a substantive right which may not be waived." *Thompson*, 985 F.3d at 520 (cleaned up). So it does not matter that one might contend that a contractual limitation period interferes with FMLA rights in violation of the FMLA provision barring such interference by employers. *Thompson* makes clear that even without that proviso, the FMLA statute of limitations is non-waivable.

True, portions of *Logan* appear to suggest that the ban on contractual provisions that shorten the statute of limitations for Title VII claims applies only "outside of an arbitration agreement." 939 F.3d at 839. But that language does not foreclose the Court's holding today for three reasons.

First, and foremost, the later holding in *Thompson* did not include this purported caveat when it held (rather emphatically) that Sixth Circuit caselaw "has made clear that where statutes that create rights and remedies contain their own limitation periods, the limitation period should be treated as a substantive right which may not be waived." 985 F.3d at 520 (cleaned up). *Thompson*'s categorical rule

16

requires finding such limitations periods non-waivable regardless whether the agreements purporting to waive them are arbitration contracts or not.

Second, the *Logan* court never really addressed why its holding, which applies to contracts shortening limitations periods generally, would not also apply to such provisions in arbitration agreements—which are likewise contracts. *Morgan v. Sundance, Inc.*, 596 U.S. 411, 418 (2022) (rejecting a lower court's arbitration-specific waiver rule because the FAA's policy favoring arbitration "is to make arbitration agreements as enforceable as other contracts, *but not more so*" (cleaned up) (emphasis added)).

And third, *Logan*'s caveat seems to be based on its distinguishing the Sixth Circuit's prior opinion in *Morrison v. Circuit City Stores, Inc.*, 317 F.3d 646 (2003). But as *Logan* itself recognized, *Morrison* did not hold that contractual limitations periods when included in arbitration agreements are enforceable even for claims arising under Title VII of the Civil Rights Act. Rather, *Morrison* simply rejected the argument the plaintiff made in that case that the inclusion of a contractual limitations period in an arbitration agreement "render[ed] the entire agreement [to arbitrate] unenforceable." *Logan*, 939 F.3d at 837–38 (explaining *Morrison*'s holding); *see Morrison*, 317 F.3d at 666, 673 n.16 (holding that the applicable arbitration agreement was not unconscionable despite "Morrison's argument[]" to the contrary that the agreement's limitations provision constituted an "unfair and unreasonable term[]"). In other words, neither *Logan* nor *Morrison* (which precede *Thompson*) requires that the Court deviate from *Thompson*'s clear holding: that contractual

17

limitations cannot shorten the limitations periods set forth in the same statutes that create express rights and remedies. 985 F.3d at 520.

Accordingly, the Arbitration Agreement does not bar Trout from proceeding to the merits of her FMLA claim just because she failed to satisfy the timeframe it sets forth. And given, as noted above, that Trout's FMLA claim is timely under the statutory limitations period, and that the arbitrator left open the door for Trout to reach the merits of that claim if the FMLA statute of limitations applied, dismissal on this basis is unwarranted. Therefore, (and in light of UCMC's waiver of its right to arbitrate, *see supra* note 8), the Court proceeds to address UCMC's sole merits-related argument as to why Trout's FMLA claim fails to state a claim for relief: that Trout cannot maintain her FMLA claim because she was terminated prior to being eligible to receive FMLA leave. (Doc. 17, #205–06 (arguing that because Trout admitted she was not entitled to FMLA leave *at the time of her termination* she failed to state a claim for relief under the FMLA)).

This argument fails under prevailing law. In *Milman v. Fieger & Fieger, P.C.*, the Sixth Circuit reversed a district court that had incorrectly believed (as UCMC now argues) that a plaintiff must allege his entitlement to FMLA leave to survive a motion to dismiss. 58 F.4th 860, 862 (6th Cir. 2023). It explained that contrary to that district court's mistaken interpretation, "an employee's notice of need [of leave under the FMLA]—regardless of whether the employee was ultimately entitled to [such] leave—[constituted] protected conduct [under the FMLA]." *Id.* at 869. And because an employee engages in protected conduct by simply putting the employer on notice

that he may seek FMLA leave, an employer's termination as a result of such notice is actionable under the statute—such a claim does not turn on the employee's ultimate entitlement to leave. *Id.* at 869–72. Trout's FMLA claim here survives under that holding. Trout alleges that she notified UCMC that she wanted to take FMLA leave, UCMC terminated her following that notice, and she alleges such termination interfered with her assertion of her FMLA rights.[9] (Doc. 15 ¶¶ 37, 42, #192–93). Those allegations identify protected FMLA conduct with which UCMC purportedly interfered by taking an adverse action against Trout. And the Sixth Circuit has held that states a claim for relief under the FMLA. *Milman*, 58 F.4th at 872.

UCMC's sole case to the contrary involves an unpublished district court issued a decade and a half prior to *Milman*. (Doc. 17, #206 (citing *Miller v. Sola Int'l, Inc.*, No. 05-cv-34, 2006 WL 1717052, at *4 (E.D. Ky. June 19, 2006))). Not only is this case not binding, but it lacks legal force for the proposition that a plaintiff must allege FMLA eligibility to raise a valid FMLA claim given that holding directly conflicts with the Sixth Circuit's ruling in *Milman. Canter v. Alkermes Blue Care Elect Preferred Provider Plan*, No. 1:17-cv-399, 2024 WL 2698405, at *9 (S.D. Ohio May 24,

---

[9] In fact, and contrary to UCMC's assertion, Trout's allegations take it a step further. Trout alleges that her husband's surgery (which event necessitated her obtaining FMLA leave) had not been scheduled at the time of her termination, but that she would have met the relevant qualifications (that is to say, having been an employee for more than a year and having worked at least 1250 hours during that time period, FMLA § 101(2)(A), 29 U.S.C. § 2611(2)(A)) "by the time of her husband's spinal surgery." (Doc. 15 ¶¶ 38–39, #192–93). In other words, Trout alleged her entitlement to such leave anyway. So even assuming that UCMC were correct to claim Trout needed to "show that she was an FMLA eligible employee to bring a claim," (Doc. 17, #206)—again it is not under *Milman*—she has included such an allegation in the Complaint. The FMLA claim therefore survives dismissal even on this basis.

2024). For that reason, the Court declines to follow it and thereby rejects UCMC's argument premised on its since-abrogated holding.

Putting that altogether, the Court finds that Trout's FMLA claim is not barred by the contractual limitations period, the arbitrator did not foreclose further review of the claim, and (acting on UCMC's implied waiver of its arbitration right) UCMC's sole merits-based argument lacks support. Accordingly, the Court denies UCMC's motion to dismiss with respect to Trout's FMLA claim.

## B.    Breach of Contract Claim

Trout's second claim is her purported breach-of-contract claim. (Doc. 15, #193–95). As noted above, Trout claims UCMC breached the Litigation Agreement, *see supra* note 5, the parties purportedly reached as a means of resolving her first state-court suit against UCMC. (Doc. 15, #193–95). UCMC challenges the viability of this claim largely on the grounds that such a claim should have been raised in arbitration but was not. (Doc. 17, #204; Doc. 20, #222–23). That said, UCMC also seems to highlight a portion of the arbitrator's decision as support for its position that the only contract between the party was the original Arbitration Agreement that Trout signed while employed with UCMC. (*See* Doc. 20, #220, 222). The Court agrees that both arguments have merit and that each independently requires dismissal of the breach-of-contract claim.

Start with the latter proposition—that the so-called Litigation Agreement is not an enforceable contract. Although Trout does not expressly say so, she appears to believe the Litigation Agreement can be enforced because the promise to dismiss her

first lawsuit was valuable consideration for her agreeing to arbitrate under the Arbitration Agreement she disputes ever signing. (*See* Doc. 19, #212–13). Normally, a compromise of a lawsuit can suffice as valuable consideration for other promises made. *Goldstein v. D.D.B. Needham Worldwide, Inc.*, 740 F. Supp. 461, 467 (S.D. Ohio 1990). But that rule holds only when one has a good-faith basis for the dispute. *See Arpin v. Consol. Rail Corp.*, 75 N.E.3d 948, 955 (Ohio Ct. App. 2016) ("To be valid, a release must reflect a bargained-for settlement of a known claim for a specific injury." (cleaned up)). So if Trout had a valid basis for contesting the forum for adjudicating her claims, an agreement to arbitrate predicated on a dismissal of the initial suit could be enforced. In contrast, if she had no foundation for disputing that she signed the Arbitration Agreement, dismissing her suit to arbitrate claims under that already binding agreement would simply be Trout's agreeing to do what she was already obligated to do. *Word of God Church v. Stanley*, 2011-Ohio-2073, ¶¶ 9–14 (2d Dist.). The latter scenario does not involve a new contract, as "[a] promise to do what one is already bound to do is not sufficient consideration for a new contract." *Cuspide Props., Ltd. v. Earl Mech. Servs.*, 53 N.E.3d 818, 830 (Ohio Ct. App. 2015).

In this case, the Court (via a different judge) previously found that not only had Trout signed the Arbitration Agreement, (Doc. 10, #151), but she had done so after expressly acknowledging in her employment application that UCMC had an arbitration agreement and that she would be bound by it if given a job, (*id.* at #151–52 (citing Doc. 5-2, #80)). UCMC notified Trout of the existence of both the Arbitration Agreement and the evidence that clearly showed she was bound by it prior to Trout's

21

decision to dismiss her initial suit and to proceed in arbitration. (Doc. 5-1, #59). In other words, Trout, without any remaining basis for contesting her obligations to arbitrate her claims under the Arbitration Agreement, agreed to comply with its terms—in short, a promise to adhere to her preexisting contractual obligations. As that cannot provide consideration for a "new" contract, *Cuspide*, 53 N.E.3d at 830, Trout's breach-of-contract claim fails as a matter of law. The "Litigation Agreement" was not a contract UCMC could breach.[10]

---

[10] As alleged, Trout's references to her disputing the validity of the Arbitration Agreement and the exchange of promises (dismissal of the first suit for proceeding in arbitration), coupled with her request for damages, unambiguously demonstrates she intended to plead this claim as one at law for breach of contract. (Doc. 15 ¶¶ 47–49, 58–60, #193–95). That said, the Court notes that given the factual scenario here, Trout may instead have intended to press a promissory estoppel claim. In other words, Trout might have claimed that, notwithstanding her obligations under the Arbitration Agreement, she detrimentally relied on an unambiguous promise from UCMC that it would initiate the arbitration proceedings on her behalf, and that the delay resulting from her reliance on that promise caused her to file her arbitration demand outside the 180-day contractual limitations period. *Ford Motor Credit Co. v. Ryan*, 939 N.E.2d 891, 921–22 (Ohio Ct. App. 2010). If she prevailed on such a claim, the proper remedy would be to excuse her untimeliness and to permit her to proceed to the merits of her state-law and FMLA claims even though she failed to comply with the Arbitration Agreement's contractual limitations period. *Bedinghaus v. Vill. Of Moscow*, 536 N.E.2d 58, 65 (Clermont Cnty. Ct. Com. Pl. 1987) ("The remedy [for promissory estoppel] may be limited as justice requires and used only if injustice can be avoided by its application."); *cf.* 25 Williston on Contracts § 67:24 (4th ed.) (explaining that specific performance may still be awarded even if the counterparty's actions "prevent[ed] the happening of a condition precedent or of a counterperformance"). Yet if that were the claim that Trout intended to press here, any such promissory estoppel claim would now be moot. As to the state-law claims, the Court can offer no additional relief, as they have been completely adjudicated in arbitration. Yes, the arbitrator concluded Trout could not recover on her state-law claims because they were untimely under contract. But had Trout wanted to use promissory estoppel to bar the arbitrator's enforcement of the 180-day window, the time to raise that argument would have been before the arbitrator or to the Court under sections 10 or 11 of the FAA. Having not done so, the arbitrator's determination as to those claims is final. That means if relief were available for a potential promissory estoppel claim, it would be with respect to Trout's remaining FMLA claim, which the arbitrator did not resolve in full. But there is no live dispute regarding the FMLA claim left as the Court has concluded that Trout may proceed to the merits that claim in this judicial forum despite the contractual limitations period—the exact relief the Court would award for a meritorious promissory estoppel claim

In fact, this conclusion aligns perfectly with the arbitrator's decision in this matter. In response to Trout's assertion that her failure to initiate arbitration proceedings during the contractual 180-day period should not be held against her because she believed UCMC would do so, the arbitrator held that UCMC's inaction did not alter Trout's obligation under the Arbitration Agreement to prosecute her own claims. Namely, he found that UCMC's inaction "did not indicate or imply any agreement on its part to stay, [to] toll or [to] waive the 180-day request period explicitly set forth in the Arbitration Agreement. … The ball was in [Trout]'s court with the known expiration date upon which a demand for arbitration would expire." (Doc. 12-1, #161). In other words, the arbitrator concluded that Trout had the affirmative duty to initiate arbitration had she wanted to pursue her claims and that nothing UCMC did altered that contractual requirement. As Trout does not contest any portion of the arbitrator's decision in her briefing (merely seeking to circumvent it), this holding binds the Court. *Schafer*, 551 F. App'x at 818–19. Accordingly, Trout's breach of the Litigation Agreement (which imports the terms of the Arbitration Agreement) also fails on the merits—UCMC breached no promise to Trout. *Quest Workforce Sols., L.L.C. v. Job1USA, Inc.*, 75 N.E.3d 1020, 1030 (Ohio Ct. App. 2016).

But even giving Trout the benefit of the doubt and construing the Litigation Agreement as a distinct, enforceable agreement, her breach-of-contract claim still fails at this point for the simple reason that she needed (but failed) to *arbitrate* that claim. For starters, through the Litigation Agreement Trout agreed to comply with

---

of the type described above. *See supra* Part A. So even assuming the Court could construe Trout's contract claim as one for promissory estoppel, the Court would still dismiss it.

the terms of the Arbitration Agreement. (Doc. 15 ¶ 48, #193–94). That means that the Litigation Agreement imports the terms of the Arbitration Agreement. And those terms include the requirement under the latter that "all claims … that *in any way* arose *or arise out of*, or *relate in any way* to, your employment with [UCMC] or the termination of your employment with [UCMC] … [including] claims for breach of contract" be arbitrated, (Doc. 5-2, #83 (emphases added)), as well as the provision underscoring that the agreement to arbitrate "applies to claims that arose or arise during *or after* termination of your employment," (*id.* at #90 (emphasis added)). UCMC's purported promise to initiate the arbitration regarding Trout's disputes about the legality of her termination comfortably falls within this expansive and all-encompassing language. That means Trout had to arbitrate that claim (which she raised in her initial Complaint in this action, (Doc. 3, #36–37)) when this Court ordered her to do so, or else lose any relief that could be provided under such a claim. *See UAW Int'l v. TRW Auto. U.S. LLC*, 850 F. App'x 929, 937–38 (6th Cir. 2021) (holding that district courts lack the authority to resolve issues subject to arbitration once an arbitrator enters his judgment, even though the plaintiff failed to pursue the matter while arbitrating the case, as he "cannot thereafter go to the district court for a second bite at the apple"). And there can be no question that the Court in fact did order this claim to arbitration. The order language stated unambiguously that the Court compelled the *entire* "matter to arbitration," which would necessarily encompass the breach-of-contract claim. (Doc. 10, #153). This follows from the fact that the term 'matter' "most naturally refers to 'the entire case' when employed in a

24

judicial context. Matter, Black's Law Dictionary (11th ed. 2019) ('A subject under consideration, esp. involving a dispute or litigation; CASE.')." *Jordan v. Carter*, ___ F. Supp. 3d ___, 2024 WL 3260483, at *2 n.2 (S.D. Ohio 2024). But despite the Court's command sending this claim to arbitration, Trout failed to pursue it there, (Doc. 13-1, #173–84)[11]—a fact she does not dispute, (Doc. 19, #213). So she cannot now ask this Court to grant her relief on that claim; rather that was for the arbitrator.

Trout objects to this conclusion, contending that her claim for UCMC's breach of the Litigation Agreement does not relate to her "employment or termination [because it] … arises solely from independent conduct from [UCMC] which occurred after [her] termination." (Doc. 19, #217). But there are three problems with that argument.

First, if she thought this breach-of-contract claim was not arbitrable, she had two avenues to raise this issue: before the Judge who compelled arbitration, (Doc. 10, #148, 150 (observing that Trout contested only whether the parties agreed to arbitrate)), and before the arbitrator given threshold issues of arbitrability were also within his purview, *see supra* note 7 (referring to Doc. 5-2, #90). She did not do so in

---

[11] As noted above, the Court may take judicial notice of Trout's arbitration complaint on a motion to dismiss, especially given the document is signed by both her and her attorney, (Doc. 13-1, #182, 184), and is "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned," Fed. R. Evid. 201(b)(2). *Purjes*, 2016 WL 552959, at *4; *cf. Gesenhues v. Radial, Inc.*, No. 19-5932, 2020 WL 1815738, at *1, *3 (6th Cir. Mar. 23, 2020) (taking judicial notice of "the discrimination charge [plaintiff] filed with the Equal Employment Opportunity Commission"). Even were judicial notice unavailable at this stage of the ligation, the Court's resolution of the motion to dismiss would not change, as Trout readily admits the underlying point for which her arbitration complaint is relevant: that her demand for arbitration did not include her breach-of-contract claim. (Doc. 19, #213).

either forum. And as already noted, the prior Judge sent the entire "matter" to arbitration for the arbitrator to adjudicate. Her challenge is thus too little, too late.

Second, as noted, the Arbitration Agreement expressly contemplates coverage of claims that pop up even *after* Trout's termination. It unambiguously states "[t]he Agreement survives your employment relationship with UC Health, which means that it applies to claims that arose or arise during *or after* termination of your employment." (Doc. 5-2, #90). That proviso completely undermines the central premise of Trout's argument that events transpiring post-termination cannot be covered by the agreement to arbitrate.

Third, as a factual matter, her naked assertion, without further explanation, that this claim does not relate to her termination does not carry the day. Sure, both the Litigation Agreement and UCMC's alleged actions (or more accurately inaction) in violation of that agreement occurred after her termination. But that does not mean her claim for a breach of that agreement did not "in any way … arise out of or related in any way to, [Trout's] employment with [UCMC] or the termination of [her] employment." (Doc. 5-2, #83). To the contrary, Trout and UCMC were discussing arbitration only *because of* her termination. And the question of how best to comply with a binding agreement to arbitrate any dispute about her termination, including doing so by agreeing to dismiss a lawsuit in favor of such contractually required arbitration, both arises from (i.e., springs from) and relates to (i.e., is inextricably intertwined with) her employment. *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 96–97, 97 n.16 (1983) (explaining that "relates to" when employed in its normal sense has

broad reach and means anything that "has a connection with or reference to" the intended object). And that means the breach-of-contract claim was arbitrable.

Simply, Trout cannot avoid the Arbitration Agreement by noting that the complained of actions occurred after termination—the "in any way relates to" language is broad enough to sweep in her breach-of-contract claim, as is the fact that the Arbitration Agreement expressly applies to "claims that arose or arise … after [her] termination." Thus, Trout's claim for UCMC's breach of the so-called Litigation Agreement should have been arbitrated. As it was not, she cannot now pursue the claim in court, and it instead must be dismissed. And because she could have pursued this claim in the correct forum with the other claims raised in her Complaint but did not do so, the Court will dismiss that claim with prejudice.

## CONCLUSION

As explained above, Trout may take one more crack at litigating her FMLA claim, but not her breach-of-contract claim. Accordingly, the Court **GRANTS IN PART AND DENIES IN PART** Defendant's Motion to Dismiss (Doc. 17) and **DISMISSES WITH PREJUDICE** Count II of the Amended Complaint (Doc. 15).

**SO ORDERED.**

August 1, 2024
**DATE**

**DOUGLAS R. COLE**
**UNITED STATES DISTRICT JUDGE**

27